IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ALEX CRIST II,

    Plaintiff,

vs.              No. CIV 04-871 LCS

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

  **THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse and Remand Administrative Agency Decision (Doc. 7), filed December 1, 2004. The Commissioner of Social Security issued a final decision denying Plaintiff's application for supplemental security income and disability insurance benefits. This matter comes before this Court pursuant to 28 U.S.C. § 636(c). The United States Magistrate Judge, having considered the Motion, briefs, administrative record, and applicable law, finds that this Motion is not well-taken and should be **DENIED**.

  **I. STANDARD OF REVIEW**

  The standard of review in a Social Security Appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *Hamilton v. Sec'y of Health & Human Svcs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such relevant evidence as a reasonable mind might accept to support the conclusion. *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988). The decision of an Administrative Law Judge

("ALJ") is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on the record. *Id.* at 805.

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or to last for a continuous period of at least twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)(1)(A)). The Secretary has established a five-step process for evaluating a disability claim. *Bowen v. Yuckert*, 482 U.S. 137 (1987). At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment, that he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpart P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. *See Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education and prior work experience. *See Gatson v. Bowen*, 838 F.2d 442, 448 (10th Cir. 1988).

## II.    PROCEDURAL HISTORY

Plaintiff, now 44 years old, filed applications for disability insurance benefits (R. at 53-55) and supplemental security income (R. at 157-159) on June 7, 2002, alleging disability commencing on October 31, 2001. (R. at 53). Plaintiff has a high school education and listed past relevant work as an assembly line worker which involved welding. (R. at 72, 77).

Plaintiff's application for supplemental security income and disability insurance benefits was denied at the initial level on December 2, 2002 (R. at 31-35) and at the reconsideration level on March 12, 2003. (R. at 38-41). On May 8, 2003, Plaintiff retained attorney E.C. "Mike" Gomez, (R. at 27) and appealed the denial of his application by filing a Request for Hearing by Administrative Law Judge. (R. at 42). This hearing was held on November 17, 2003. (R. at 166-202).

The ALJ issued his decision on February 20, 2004 (R. at 10-21), analyzing Plaintiff's claim in accordance with the sequential evaluation procedure set forth in 20 C.F.R. § 404.1520(a)-(f). At step one of the evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. (R. at 14). At the second step, the ALJ found that claimant had an impairment considered 'severe' based on the requirements of 20 C.F.R. § 404.1520(b). (R. at 15). The ALJ further found that Plaintiff's medically determinable impairments did not meet or equal any of the impairments found in the Listing of Impairments ("Listings"), Appendix I, Subpart P, 20 C.F.R. §§ 401.1501-1599. (Id.) The ALJ also determined that Plaintiff was not fully credible regarding the extent of his limitations. (R. at 19). At step four, the ALJ found that claimant could not perform his past relevant work as a welder, but that he retained the Residual Functional Capacity for a range of light work. (R. at 20). At step five, the ALJ consulted a vocational expert who opined that, despite his limitations, Mr. Crist would be able to perform work existing in significant numbers in the national economy and that, therefore, he had not been under a disability, as defined in the Social Security Act, at any time during the period under review. (Id.)

Plaintiff filed a Request for Review of Hearing Decision on March 11, 2004 and the

Appeals Council denied this request on June 4, 2004. (R. at 4-6, 9). Hence, the decision of the ALJ became the final decision of the Commissioner for purposes of judicial review. On August 3, 2004, Plaintiff filed the present action, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

### III.   FINDINGS

The medical records before the ALJ in this matter date back to June of 1997, at which time Plaintiff was diagnosed with subacute cutaneous lupus erythematosus. (R. at 119-124). Dr. Barbara Abercrombie indicated that Mr. Crist had "rather significant skin findings" and that some systemic symptoms were present as well. (R. at 119). Plaintiff was noted to be totally disabled at that time, and Dr. Abercrombie opined that he would remain so for three months. (Id.) She advised against performing his job as a welder or otherwise working around ultraviolet light. (Id.) In December of 1997, Dr. John Henry also advised against working around any type of light emissions and further noted that Plaintiff's skin condition was very difficult to control, even with medications. (R. at 122). He further advised that, as of December, 1997, Plaintiff was unable to work. (Id.)

The record is silent as to Plaintiff's condition until August, 2001, at which time claimant was again seen by Dr. Henry for skin eruptions, especially of the hands and arms. (R. at 155). Plaintiff had apparently continued to work as a welder during the intervening period  Mr. Crist was found to be doing poorly, especially from an emotional standpoint, and erythematous lichenified plaques were noted on both forearms and hands, with accompanying scarring. (Id.) Dr. Henry instructed Plaintiff to restart his prescription for Plaquenil at an increased dosage and prescribed Lidex as well. (Id.) Dr. Henry also advised Plaintiff to seek counseling. (Id.)

Mr. Crist filled out a disability report in June of 2002, at which time he indicated that his illness caused his bones to ache and that he had difficulty standing for even short periods of time. (R. at 66). He also indicated he was fired in October of 2001 from his previous job as a welder and bus assembler due to excessive absences resulting from his illness. (Id.) Plaintiff also completed a daily activities questionnaire in which he indicated that he was unable to go outside for any continuous period of time as sunlight aggravated his skin condition. (R. at 83). He further indicated that his daily and recreational activities were quite limited with some occasional visits with family members being his only social interaction. (R. at 86). He also described completing various household chores. (Id.)

Mr. Crist stated that he was kept awake at night due to pain and that he therefore slept for much of the day. (R. at 87). He indicated this pain was continuous and further described the pain as aching, stinging and throbbing and stated it would become so debilitating that he was sometimes unable to walk. (R. at 94). Mr. Crist did not list any medications which he used to relieve pain. (Id.)

Plaintiff saw Dr. Karen Balkman in October of 2002 for further evaluation of his condition. Dr. Balkman noted that Plaintiff had not taken any of his prescribed medications since January of 2002 as he had lost his job and stated he could no longer afford these medications. (R. at 130). Dr. Balkman discussed visible scarring on the upper extremities, trunk, and lower extremities. Plaintiff was also noted to be complaining of arm and hand pain with aching, throbbing and itching. (R. at 132). It was noted that Mr. Crist would likely have difficulty working in sunlight or ultraviolet light due to his dermatologic problems. (Id.) Dr. Balkman also believed Plaintiff would have difficulty with fine motor movements or repetitive function

5

movements of the hands. (Id.)

An RFC assessment completed by Dr. Rayme Romanik in November of 2002 determined that Plaintiff could frequently lift 10 pounds and could occasionally lift 20 pounds. (R. at 138). Plaintiff was also found to be able to stand or walk for about 6 hours in an 8-hour workday. (Id.) He was noted to have limitations in handling (gross manipulation) and in fingering (fine manipulation). (R. at 140). Dr. Romanik did not feel that Plaintiff had any communicative or environmental limitations. (R. at 141).

Mr. Crist's physician, Dr. John Henry, completed a Lupus Residual Functional Capacity Questionnaire regarding Plaintiff in May of 2003. (R. at 147-151). Dr. Henry found Plaintiff to be suffering from malar rash, discoid rash and photosensitivity. (R. at 147). Mr. Crist was also noted to have symptoms of diarrhea or constipation with abdominal cramping or pain. (R. at 148). Also noted were severe fatigue, severe malaise and dermal vasculitis. (Id.) Dr. Henry indicated that he did not feel the patient was a malingerer, but did state that emotional factors contributed to the severity of his symptoms and limitations. (Id.) It was further stated that Mr. Crist's symptoms could be expected to last at least twelve months. (R. at 149). Dr. Henry further found that Plaintiff's symptoms seldom interfered with attention and concentration and Dr. Henry felt that Plaintiff could tolerate a job involving a moderate amount of stress. (Id.) Dr. Henry had previously prescribed hydroxychoroquine to treat Plaintiff's symptoms, which Mr. Crist discontinued, apparently due to an inability to pay for the treatment. (R. at 117).

**IV.     ANALYSIS**

In his Motion to Reverse and Remand Administrative Agency Decision, Plaintiff raises the following allegations of error: 1) The ALJ erred in not giving proper weight to Plaintiff's treating

physicians; 2) The ALJ erred in his determination of Plaintiff's RFC; 3) The ALJ erred in his assessment of Plaintiff's credibility; and, 4) The ALJ erred by asking incomplete questions of the Vocational Expert.

### a. Analysis of Treating Physician's Opinions

Plaintiff's Motion argues that the ALJ erroneously "ignored" all the assessments and findings of his treating physicians. He further contends that the ALJ erroneously placed more weight on the opinion of the Agency's consulting physician than on those of his treating physicians. I find Plaintiff's contentions to be without merit.

It is axiomatic that the ALJ must give controlling weight to the treating physician's opinion, provided that opinion is well-supported and is not inconsistent with other substantial evidence. *White v. Barnhart*, 287 F.3d 903, 907 (10th Cir. 2001). 20 C.F.R. § 404.1527(d)(2). The Tenth Circuit has found that factors to be considered in evaluating a treating physician's opinions include the opinion's consistency with other evidence, the length of the treatment relationship, the frequency of examination, and the extent to which the opinion is supported by objective medical evidence. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). A physician's opinion is not however, entitled to controlling weight on the basis of a fleeting relationship. *Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003).

It does not appear from the record that the ALJ either discounted the opinions of Drs. Henry and Balkman, or that he gave controlling weight to the agency physician's assessment of Mr. Crist's condition. (R. at 16). The ALJ accepted Dr. Henry's opinion that Plaintiff would be unable to work in situations involving exposure to either natural or ultraviolet light emissions. He accepted Dr. Balkman's similar findings as to light restrictions and further accepted her opinion

that Plaintiff would have difficulty with fine motor or repetitive movements of his hands.  (Id.)  These findings are quite similar to those of the agency physician who determined that Plaintiff could perform light work with limited handling and fingering and no exposure to ultraviolet light.  (Id.)  It is my opinion therefore that the ALJ gave appropriate weight to the opinions of Plaintiff's treating physicians and did not give undue weight to the opinions of the consulting physician.  Plaintiff's contentions on this point must therefore be rejected.

      **b.**      **Assessment of Plaintiff's Residual Functional Capacity**

Plaintiff next contends the ALJ erred in finding he had the residual functional capacity for a restricted range of light work.  Specifically, Plaintiff argues that, given the severity of his impairment and the assessments of his physicians, the ALJ's determination is not supported by the record.  Plaintiff's argument mischaracterizes the opinion of the ALJ.

A claimant's RFC is determined by what the individual can do despite his limitations, and is based upon all the relevant evidence, including medical records, observations of treating physicians and others, as well as on a claimant's own descriptions of his limitations.  20 C.F.R. §§ 416.945(a)-416.946.  Plaintiff provides the Court with a number of physician's comments which he feels are contrary to the ALJ's RFC assessment.  Examination of the ALJ's opinion however reveals that he carefully considered all these assessments.  (R. at 16-17).  Furthermore, the opinions pointed to by Plaintiff largely center around his inability to be around sources of bright light or heat, or to perform fine motor movements with his hands.  (Doc. 8).  Contrary to Plaintiff's assertion that the ALJ's opinion was not supported by substantial evidence, the ALJ clearly took this evidence into account in finding that Plaintiff could perform only a restricted range of light work which did not involve exposure to sunlight and did not involve repetitive

fingering. (R. at 18). The ALJ's RFC assessment was therefore supported by substantial evidence and Plaintiff's argument that the ALJ erred in making this assessment must be rejected.

### c. ALJ's determination of Plaintiff's Credibility

Plaintiff next argues that, because Plaintiff does not retain the RFC to perform any type of substantial gainful activity, the ALJ's assessment that Plaintiff was not fully credible regarding his limitations cannot be sustained. The ALJ found that Plaintiff's testimony as to his limitations was credible only to the extent supported by the record: namely, that Plaintiff was limited to a restricted range of light exertional work, requiring no exposure to sunlight or ultraviolet light, and requiring no more than occasional manipulation bilaterally. (R. at 17-18).

It is well-established that subjective testimony alone that the claimant has symptoms cannot establish a finding of disability. *Gatson v. Bowen*, 838 F.2d 442, 447 (10th Cir. 1988). Objective medical evidence must establish an impairment and statements regarding the intensity and persistence of symptoms must be consistent with the medical findings and signs. *Id.*

When determining the credibility of pain testimony, the ALJ should consider factors such as the levels of medication and their effectiveness, the extensiveness of attempts to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility, the motivation of and relationship between the Plaintiff and other witnesses, and the consistency or compatibility of non-medical testimony with the objective medical record. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). The Tenth Circuit generally treats credibility determinations made by an ALJ as binding upon review. *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983). The Court has previously stated that credibility determinations are particularly the province of the finder of fact and the Court has declined to upset such determinations when

supported by substantial evidence.  *Diaz v. Sec'y of Health and Human Svcs.*, 898 F.2d 774, 777 (10th Cir. 1990).

In the present case, it is apparent from the record that the ALJ did consider the frequency of medical contacts, the nature of Plaintiff's daily activities, the extensiveness of attempts to gain relief and the compatibility of non-medical testimony with the objective medical record.  Because I find that the ALJ's determinations regarding Plaintiff's credibility were supported by substantial evidence, I find the decision of the Commissioner should be upheld with respect to the ALJ's credibility determination.

### d.     The ALJ posed Defective Questions to the Vocational Expert

Finally, Plaintiff argues that the ALJ erred in failing to ask questions of the VE which encompassed all of Plaintiff's limitations.  At the hearing, the ALJ questioned the VE as to whether jobs existed in the national economy for an individual who was limited in manipulative fingering or handling, who could lift only ten (10) pounds frequently, and who could not be exposed to sunlight or ultraviolet light.  (R. at 194-195).  The VE indicated that jobs existed in the national economy that such a hypothetical individual could perform.  Plaintiff's counsel then questioned the VE as to whether jobs existed for an individual who could not be exposed to fluorescent light.  (R. at 197-198).  The VE indicated that such an individual would be unemployable.  (Id.)

Plaintiff apparently argues that, given this response, the ALJ erred in finding Plaintiff could perform jobs existing in the national economy.  However, the hypothetical posed by Plaintiff's attorney set forth limitations which the ALJ found did not apply to Plaintiff.  Plaintiff's physicians cautioned him from exposing himself to sunlight or to ultraviolet light, but did not indicate that

Plaintiff should avoid fluorescent light.  A vocational expert's testimony is not binding on an ALJ if it incorporates limitations that the ALJ finds do not apply to the claimant.  *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1999).  As such, the ALJ was correct not to incorporate the VE's response to this hypothetical into his decision and Plaintiff's argument on this point must be rejected.

## V.   CONCLUSION

Upon review of the evidence presented in Plaintiff's Motion to Reverse and Remand Administrative Decision, I have determined that the Commissioner's decision was supported by substantial evidence.  Accordingly, Plaintiff's Motion to Reverse and Remand for Rehearing is **DENIED.**

**A JUDGMENT CONSISTENT WITH THIS OPINION SHALL ISSUE.**

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**